# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| THE ESTATE OF PATRICK MICHAEL WISE, ET AL, | § § § § | |
| Plaintiffs, | § § | Case No. 2:17-cv-00788-RSP |
| v. | § § | |
| CITY OF GLADEWATER, TEXAS ET AL, | § § § § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Robert Carlsen's Motion for Summary Judgment (Dkt. No. 52), which asserts that Carlsen is entitled to qualified immunity for claims that Carlsen used excessive force.

After reviewing the underlying briefing and conducting a hearing on issues of qualified immunity, the Court concludes that summary judgment is appropriate. Viewing the facts in a light most favorable to Plaintiff, no reasonable jury could conclude that Defendant Carlsen's use of force amounted to a constitutional violation. Therefore, Carlsen is entitled to summary judgment based on qualified immunity.

## I. BACKGROUND

Plaintiffs are the survivors of Patrick Michael Wise, who died from gunshot wounds incurred on the night of November 5, 2016 in Gladewater, Texas. The relevant events occurred at night, so it was dark and difficult for Carlsen and Wise to see their

surroundings. Defendant Carlsen is a Gladewater police officer who attempted to stop Wise's vehicle because Wise's license plate was obscured.[1] (Dkt. No. 52-1 at 63:9–64:4; Dkt. No. 55 at 12.) Wise eventually pulled over and came to a stop in the road. (Dkt No. 56-7.) As Carlsen approached Wise's vehicle, Wise drove off, and Carlsen went back to his vehicle to pursue Wise. (Dkt. No. 52-1 at 87:14–16; Dkt No. 56-7.) Eventually, Carlsen caught up to Wise's vehicle, which was parked in the road and with the driver's door open. (Dkt. No. 52-1 at 98:5–99:25; Dkt No. 56-7.) Carlsen heard Wise's footsteps and began pursuing Wise on foot, with his body camera turned on. (Dkt. No. 52-1 at 104:9–106:4; Dkt. No. 52-2 at 117:20–118:4.)

During the pursuit, Carlsen and Wise entered into a semi-enclosed, undeveloped lot, with fences that were roughly 6 feet tall running along the north and west perimeters. (Dkt. No. 55 at 14 (citing Dkt. No. 56-9).) Carlsen tripped and fell to the ground in the tall grass of the lot. (Dkt. No. 52-2 at 125:21–126:4.) After Carlsen fell to the ground, Carlsen and Wise began fighting with each other. (*Id.* at 128:25–130:2.) Carlsen's body camera fell off at some point during this altercation, causing the video to be entirely dark. (Dkt. No. 52-1 at 14:18–15:2; Dkt No. 56-7.) However, the body camera still provided audio for the relevant events. (*See* Dkt. No. 52-5 (transcribing the audio produced by Carlsen's body camera); Dkt No. 56-7 (providing body-cam video and audio).) Wise eventually began grabbing at Carlsen's holstered gun, but he was never able to take the gun from Carlsen. (Dkt. No. 52-2 at 139:14–21; Dkt. No. 52-5 at 2 ("Now I got your gun b****.").) Carlsen

---

[1] The reasonableness of the stop has not been challenged.

claims that while Wise had his hand on the gun, Carlsen offered to let Wise go away. (Dkt. No. 52-2 at 142:2–14.) This is corroborated by the following statements from the audio:

> Carlsen: You just want to walk away?
> Wise: Huh?
> Carlsen: You want to go?
> Wise: Let me go now.
> Carlsen: What?
> Wise: Let me go.
> Carlsen: Let go of that first.
> Wise: I will if you let me go.

(Dkt. No. 52-5 at 2.) With Carlsen lying on the ground near the center of the lot, Wise began walking around. (Dkt. No. 52-2 at 151:20–153:4; Dkt. No. 52-5 at 3.) Wise was walking around for about 37 seconds, and Plaintiffs claim that Wise was looking for a way out of the lot. (Dkt. No. 55 at 14 (citing Dkt. No. 56-7 at 4:43-5:20).) Wise was walking near the northwest corner of the lot, and with fences running along the north and west perimeters of the lot, Wise eventually walked back in the direction of Carlsen. (Dkt. No. 52-2 at 152:24–153:4.) By that time, Carlsen testifies that he had turned over and was lying in a prone position on his stomach. (Dkt. No. 52-2 at 153:5–14.) As Wise was approaching Carlsen, Carlsen's partner drove up to one edge of the lot in his police vehicle. Carlsen's partner shined a spotlight on Wise, and Wise looked over towards Carlsen's partner. (Dkt. No. 52-2 at 161:20–162:15.) At that time, Carlsen fired his weapon at Wise. (Dkt. No. 164:17–165:10.)

Carlsen claims that he was lying on the ground when he began shooting, continued shooting as he shifted up to rest on both knees, paused his shots briefly as he moved from his knees to a standing position, and then continued firing from a standing position. (Dkt.

No. 52-2 at 165:17–169:23). Two other people, Patrick Lohr and Megan Lohr, were standing in a house across the street from Carlsen and Wise. Patrick Lohr testified that Carlsen was originally on the ground before the shooting. (Dkt. No. 55-11 at 5:48–5:55.) Patrick Lohr heard the words "If you tase me again, I will f*****g shoot your a**." (*Id*. at 5:28–5:31). Megan Lohr testified that she heard that "If you tase me one more time, I am going to shoot you." (*Id*. at 10:20–10:22.) Patrick Lohr's testimony is unclear as to whether Carlsen was standing when he began shooting—Lohr stated in his Declaration that he heard shots fired and that the officer got up off the ground firing (Dkt. No. 52-7 at ¶ 6), but he stated in his interview with the Texas Rangers that Carlsen was standing up when the spotlight was first shining on him and then began firing and advancing towards Wise. (Dkt. No. 55-11 at 6:20–6:35, 11:55–12:10.) Megan Lohr stated in her interview with the Texas Rangers that she believed that Carlsen was standing when the spotlight shined on him and he started shooting from that position. (*Id*. at 11:55–12:10.)

Plaintiffs claim that Robert Carlsen violated Plaintiffs' constitutional rights to be free from excessive use of force (Dkt. No. 46 at ¶¶ 84–91). Plaintiffs also claim that the City of Gladewater, Texas is liable under a theory of municipal liability for the actions of Carlsen. (*Id*. at ¶¶ 92–100.) Plaintiffs also bring state law wrongful death claims against each of the defendants in this case. (*Id*. at ¶¶ 101–06.) This Order focuses on the claim against Robert Carlsen for excessive use of force and the related claim against the City of Gladewater for municipal liability based on that excessive use of force claim.

## II. APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

The Fifth Circuit employs a two-step analysis to determine whether an individual defendant is entitled to summary judgment on the basis of qualified immunity. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). The first step is to "determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Id.* If the first step is not satisfied, then the analysis ends and summary judgment is appropriate for the individual, but if the first step

has been satisfied, then it is necessary to proceed to step two. *Id*. at 410–11. At the second step, courts must evaluate whether the individual defendant's actions "were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id*. at 411.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983))) (internal marks omitted). Whether a particular seizure is reasonable is not capable of mechanical application or precise definition and must be determined after an inquiry into the facts and circumstances of each case. *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Important facts may include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*.

To state a claim for imposition of excessive force in the Fifth Circuit, a plaintiff must show that he or she "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998). It is established law in the Fifth Circuit that the "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting

*Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003)); *see also Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citing *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009)) ("An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others."). The Fifth Circuit has recognized that analyzing the propriety of qualified immunity for excessive force claims presents "the unusual circumstance that the standard for stating a claim, the objective reasonableness of the force exerted, coincides in large part with the inquiry for determining qualified immunity, the objective reasonableness of the officers' conduct." *Heitschmidt*, 161 F.3d at 839 (5th Cir. 1998).

In some circumstances, an officer may take a course of action based on a reasonable belief of a threat, and it may be clear in hindsight that no such threat actually existed. However, the use of force should not be assessed with the benefit of hindsight and instead should be judged from the perspective of a reasonable officer at the time. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citing *Graham*, 490 U.S. at 396); *see, e.g., Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 493 (5th Cir. 2001). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

A warning may be required in some circumstances from an officer before he or she may apply deadly force:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Garner*, 471 U.S. at 11–12. Interpreting this language, the Fifth Circuit has emphasized that a warning is only necessary where feasible and concluded that a warning would not be feasible in several cases. *See Roberts v. City of Shreveport*, 397 F.3d 287, 294 (5th Cir. 2005) ("Plaintiffs' insistence on a warning does not square with *Tennessee v. Garner* in the fast-moving scenario that Rivet confronted."); *Colston v. Barnhart*, 130 F.3d 96, 100 (5th Cir. 1997).

In *Colston*, the Fifth Circuit determined that an officer was not objectively unreasonable for failing to give a warning. *Colston*, 130 F.3d at 100. In that case, the driver was arrested for an outstanding traffic warrant, and the passenger was placed on the ground after failing to provide his name. *Id*. at 97. The passenger refused to stay on the ground and began standing up. *Id*. at 98. The officers, Barnhart and Langford, ordered the passenger to stay on the ground and attempted to push him back down to the ground, but the passenger forced his way up. *Id*. The officers eventually applied a baton and tried to control the passenger, but they were unable to; the passenger pushed Langford to the ground and struck Barnhart in the face, breaking Barnhart's glasses. *Id*. After the passenger knocked Langford down to the ground another time, leaving him limp and motionless, Barnhart drew his gun

from the prone position and fired at the passenger. *Id*. Barnhart fired three shots, with the second and third bullets hitting the passenger in the right arm and the buttocks. *Id*.

The passenger filed suit, arguing that Barnhart violated his Fourth Amendment rights by using excessive force against him and that Barnhart's failure to warn him before discharging his weapon made his conduct objectively unreasonable. *Id*. at 98, 100. The Court concluded that Barnhart's actions were not objectively unreasonable because the passenger was standing between the two officers in a position where he could inflict serious harm on the officers and because the passenger moved towards the officers' vehicle where a shotgun was located. *Id*. at 99, 100. The Fifth Circuit determined that Barnhart's failure to give a warning was not objectively unreasonable, reasoning that "Barnhart, lying on his back with [the passenger] nearby, had to immediately decide whether to shoot." *Id*. at 100.

## III. ANALYSIS

### a. Robert Carlsen is entitled to qualified immunity at step one as his actions did not constitute an objectively unreasonable use of excessive force.

The critical question to be answered here is whether a reasonable jury could conclude that Officer Carlsen's use of force was an objectively unreasonable use of excessive force based on the information that was available to him at the time that he applied that force. The Court concludes that the answer is no—no reasonable jury could conclude that Carlsen's actions were objectively unreasonable—making summary judgment appropriate at step one of the qualified immunity framework.

Each of the *Graham* factors suggest that this seizure was reasonable under the circumstances. The first *Graham* factor, the severity of the crime at issue, suggests that the use of force was reasonable under the circumstances. While Wise was originally sought for the crime of evading arrest, the evidence shows that he later committed other more serious offenses by assaulting and threatening to kill Carlsen. The Court will address the second *Graham* factor fully below, but it suggests that the use of force was reasonable. The third *Graham* factor, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, clearly suggests that Carlsen's use of force was reasonable as Wise attempted to evade arrest after being pulled over, and he also actively resisted arrest. Further, Wise attempted to evade arrest by flight and was resisting arrest by getting into a physical altercation with Officer Carlsen.

The second *Graham* factor, whether the suspect poses an immediate threat to the safety of the officers or others, also suggests that the use of force was reasonable. The facts overwhelmingly support Carlsen's alleged belief that the suspect posed a threat of serious harm to the himself, to Carlsen's partner, and potentially others based on the information available to Carlsen at the time. While Wise did not actually have any weapon when Carlsen applied deadly force, that fact is irrelevant as it is only known in hindsight. *Kingsley*, 135 S. Ct. at 2473. The information available to Carlsen at the time supports a reasonable belief that Wise was in possession of a deadly weapon and that Wise posed an immediate threat of serious harm. Wise stated the following verbal threats to Carlsen:

- "Got your gun b***h. What, what now b***h" (Dkt. No. 52-5 at 2.)
- "Got a strap in my pocket, and I'll f***ing kill you" (*Id*. at 3.)

- "Get the f*** off me dude….I got your gun, n****r boy" (*Id*. at 2.)
- "Stay down, I ain't playing. Get on the ground now or I'm gonna shoot you." (*Id*. at 3.)
- "You're dead" (*Id*.)

In addition to the verbal threats and assertions made by Wise, Carlsen also states that Wise was positioned in a manner consistent with holding a firearm. Carlsen states that Wise was "blading," in that he was standing with one foot in front of the other so that he was turned at roughly a 45-degree angle. (Dkt. No. 52 at 18; Dkt. No. 55 at 15.) Wise concealed his right hand behind his back leg in a manner that made it appear that he was holding a weapon in that hand. (Dkt. No. 52 at 9 (citing Dkt. No. 52-4 at ¶ 4); Dkt. No. 55 at 15.) Furthermore, Plaintiffs' expert, Margo Frasier, has conceded that a reasonable peace officer would believe there was a possibility that Wise might have a gun. (Dkt. No. 57 at 5 (citing Dkt. No. 52-10 at 150:2–4).)

Ms. Frasier argues that "Carlsen did not have a rational basis to believe, if he believed at all, that Patrick's actions constitute an imminent threat of serious bodily injury and/or death." (Dkt. No. 55 at 16.) However, the Court disagrees based on the reasoning provided above. Further, Frasier's assertion is contradicted by the her own concession that a reasonable peace officer would believe there was a possibility that Wise might have a gun. (Dkt. No. 57 at 5 (citing Dkt. No. 52-10 at 150:2–4).) This is also contradicted by the following response to a question at deposition:

> Q: Now, in the mind of a reasonabl[y] prudent police officer, what would that suggest to you about a suspect who after fleeing, after being shot at with a Taser, turns around and

> comes back to the officer instead of continuing to flee away from the officer? What would that suggest to a reasonable peace officer?
> Frasier: That the person is wanting to engage in a confrontation with him.
> Q: I mean, would it suggest to a reasonable peace officer that this is not an individual who's just running to get away, now he's bringing the fight to the officer? . . .
> Frasier: He's bringing the fight to the officer.

Dkt. No. 52-10 at 119:21–120:9. The concessions by Frasier that the possibility existed that Wise had a gun and that Wise was "bringing the fight to the officer" support a reasonable belief that Wise presented a threat of serious harm.

Plaintiffs make several arguments that improperly focus on subjective impressions that Carlsen allegedly possessed. Frasier argues that "[a] reasonable officer, if he was concerned about a suspect having a weapon, would issue commands such as show me your hands, and Carlsen's failure to do so indicates that *he* did not believe that Patrick had a weapon except for the inoperable taser." (Dkt. No. 55 at 17 (emphasis added).) Frasier also argues that Carlsen never searched Wise for a weapon after shooting at him and that "the failure to do so indicates that *Carlsen* did not believe [Wise] had a weapon except for the inoperable taser." (*Id.* (emphasis added).) Plaintiffs also argue that Carlsen allowed Wise to leave because *he* did not think that Wise possessed a weapon. (*Id.* at 19.) The Court's inquiry is to be conducted from the viewpoint of a reasonable officer with the information available to the Carlsen at the time force was applied, and Carlsen's own subjective beliefs or subjective intent are irrelevant. *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014) (concluding that the subjective beliefs of an officer are irrelevant to the determination of whether the officer is entitled to qualified immunity for an excessive use

of force claim); *see also Graham*, 490 U.S. at 396–97 (stating that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene" and that, "[a]s in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation"). Further, the inquiry should focus on the moment that deadly force was applied, making information that only becomes known after the event irrelevant. *See Kingsley*, 135 S. Ct. at 2473 (citing *Graham*, 490 U.S. at 396).

Wise indicated a few times that he wanted to flee. (Dkt. No. 52-5 at 3–4 (stating "Let me go," "Stay down," and "Get away from me, now").) However, after indicating this, Wise continued to make deadly threats towards Carlsen. (*Id.* (stating "Stay down I ain't playing. Get on the ground now or I'm gonna shoot you," "I ain't playing. If you shoot me with that taser . . . [y]ou're dead.).) Because Wise was approaching Carlsen, it was reasonable for Carlsen to believe that Wise posed an immediate threat of serious harm to Carlsen and Carlsen's partner.

Plaintiffs argue that Carlsen fired 11 shots at Wise and that this fact shows that Carlsen applied an excessive use of force that was objectively unreasonable (Dkt. No. 55 at 14 (citing Dkt. No. 56-7 at 5:26)). However, the facts support Carlsen's belief that Wise had a gun, and Carlsen could reasonably believe that Wise would shoot back if Carlsen happened to miss. Furthermore, while eleven shots were fired, one witness testified that the shots were fired in two volleys or groups with a pause between the two groups of shots.

(Dkt. No. 52-7 at ¶ 6.) After the first group of shots, the witness testified that Wise was still standing. (*Id*.) Carlsen then fired the second group of shots and Wise then fell to the ground. (*Id*.) Because Wise was still standing after the first volley of shots, this supports an objective belief that Wise still presented an imminent threat. Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. The tense and rapidly evolving circumstances of the present situation provide further support for Carlsen's actions.

Plaintiffs argue that the trajectory of the bullets are inconsistent with Carlsen's story. (Dkt. No. 55 at 15.) Carlsen claims that he was lying on the ground roughly 5 to 7 feet away and that he began firing his weapon from that position and then stood up as he was firing at Wise. (Dkt. No. 52-2 at 165:17–166:3, 167:3–7.) Plaintiffs argue that the location of the bullets' entry wounds on Wise were inconsistent with Carlsen's version of events because the bullets appear to have a level trajectory rather than an upward trajectory that would be consistent with Carlsen shooting from the ground five to seven feet away.

Even if Carlsen fired all of his shots while standing up, this would not prevent summary judgment here. Regardless of whether Carlsen was standing up or not at the time he fired his weapon, this does not change the fact that the other circumstances suggested that Wise posed a threat of serious harm to the officer or others. This is not a situation where Carlsen is the sole surviving witness like in *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481 (5th Cir. 2001) as other witnesses have corroborated the material portions of

Carlsen's testimony.[2] Thus, even accepting Plaintiffs argument to be true, any impact Carlsen's credibility would not preclude summary judgment.

Plaintiffs argument ignores that Carlsen missed Wise with several of his shots, and these missed shots could have been the first shots that were fired from the ground. Additionally, bullet number 6 has an entry point and an exit point at approximately the same height just above Wise's left knee (Dkt. No. 56-6 at 4), and this bullet trajectory is consistent with Carlsen firing his weapon from a prone position or on a knee (*See* Dkt. No. 52-2 at 165:17–166:3).

Plaintiffs also argue that the autopsy report conclusively shows that Wise was fleeing (Dkt. No. 55 at 14–15 (citing Dkt. No. 56-6)). However, the medical examiner stated that only one of the bullets (bullet #4) was moving back to front; the examiner stated that all other bullets moved at least partially front to back or moved entirely side-to-side. (*Id*. at 2, 4–5.) The medical examiner's conclusion that just one of the bullets traveled back to front is insufficient to create a genuine dispute of material fact.

Plaintiffs argue that Carlsen was not threatened at the specific moment that he fired at Wise because Wise was distracted by the light and looking away. Plaintiffs based this

---

[2] In *Bazan*, the Fifth Circuit affirmed the district court's denial of summary judgment of qualified immunity where an officer provided testimony, the officer was the sole surviving witness to the critical events, and disputes arose as to the events that occurred shortly before the shooting. *Id*. at 491. The *Bazan* court concluded that the disputes put the officer's credibility at issue and created a genuine dispute of material fact that precluded summary judgment. *Id*. at 491–92. The *Bazan* court emphasized the narrow factual situation that the case was directed to "one in which the sole surviving witness to the central events is the defendant himself, an interested witness." *Roberts v. Kennedy*, No. 2:17-CV-00604-RSP, 2018 WL 3439049, at *3 (E.D. Tex. July 17, 2018) (quoting *Bazan*, 246 F.3d at 493). This Court has recognized that distinction: "Critical parts of the events were observed by Officer Lusk, Tyler Hearn, and Davin Jeffery. While their testimony does not cover all the details provided by Kennedy, it does corroborate his testimony. And there is absolutely no summary judgment evidence that contradicts Kennedy's testimony as to the critical details of those 17 seconds. Under these circumstances, doubts about the officer's credibility stemming from an unrelated matter are not sufficient to create a triable issue of fact." *Id*. Summary judgment is also appropriate here because other surviving witnesses and the audio from the body cam are present to corroborate Carlsen's testimony.

argument on the reasoning that "the excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting." *Bazan*, 246 F.3d at 493. However, this argument fails for two reasons. First, Plaintiffs apply the law too narrowly. Assuming that Wise possessed a firearm (which the facts suggested), Wise could have fired at Carlsen or Carlsen's partner soon after being distracted by the light. Second, even if Wise was looking away from Carlsen and was not a danger to Carlsen in that specific moment, Wise was still looking towards Carlsen's partner—thus, Carlsen could still reasonably believe that Wise was a threat to Carlsen's partner in that specific moment under Plaintiffs' own reasoning.

The Court concludes that Carlsen's failure to warn Wise was not objectively unreasonable as a warning would not have been feasible based on the information available to Wise at the time. Like the situations presented in the Fifth Circuit cases cited and discussed above, Carlsen was not objectively unreasonable in choosing not to give a warning before shooting. This situation presented a "fast-moving scenario" where Carlsen had to "immediately decide whether to shoot." *Roberts*, 397 F.3d at 294; *Colston*, 130 F.3d at 100. The facts support Carlsen's belief that Wise had a weapon, and assuming that Wise did have a weapon, requiring Carlsen to warn Wise that he was about to shoot could have prompted Wise to fire his weapon. Furthermore, Wise's previous actions of noncompliance and evading arrest[3] suggest that a warning was not feasible.

---

[3] Plaintiffs appear to argue that Wise did not engage in a physical altercation with Carlsen. Plaintiffs argue that when Carlsen fired his taser, Carlsen did in fact hit Wise with the taser and that Wise fell over onto Carlsen only as a result of being tased. Even accepting that Wise was tased and fell onto Carlsen, Wise still appears to have engaged in a physical altercation and grabbed for Carlsen's gun as he clearly states "Now I got your gun b***h" and Carlsen subsequently states "Let go of that first." (Dkt. No. 52-5 at 2.)

For the reasons stated above, no reasonable jury could conclude that Carlsen's actions were an excessive use of force that was objectively unreasonable, so Carlsen did not commit any constitutional violation for excessive use of force. Consequently, Carlsen is entitled to qualified immunity at step one of the analysis, and summary judgment will be **GRANTED** for the excessive use of force claim against Carlsen.

### b. Municipal Liability Claims against the City of Gladewater

Because the Court limited the discovery to that related to qualified immunity, the Court will not take up the City's motion for summary judgment at this time. A scheduling conference will be set to address the claims against the City. Counsel for Officer Carlsen is free to participate but not required to do so.

## IV.  CONCLUSION

Summary Judgment is granted in favor of Defendant Robert Carlsen on the basis of qualified immunity from suit.

**SIGNED this 30th day of May, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE